UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DANIEL WHEELER,          )
                              )
          Plaintiff     )
                              )
      v.                )   CAUSE NO: 2:11 cv 474
                              )
MICHAEL J. ASTRUE, Commissioner )
of Social Security,       )
                              )
         Defendant    )

## OPINION AND ORDER

This matter is before the court on the petition for judicial review of the decision of the Commissioner of Social Security filed by the claimant, Daniel Wheeler, on December 14, 2011. For the reasons set forth below, the decision of the Commissioner is **REMANDED**.

## Background

The claimant, Daniel Wheeler, applied for Supplemental Security Income and Disability Insurance Benefits, alleging a disability onset date of October 5, 2009. (Tr. 16, 140-145) His claim initially was denied on January 29, 2010, and again denied upon reconsideration on March 24, 2010. (Tr. 64-65) Wheeler requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 30) A hearing before ALJ Kathleen Mucerino was held on January 20, 2011, at which Wheeler and vocational expert Gresnick testified. (Tr. 36-63)

On January 28, 2011, the ALJ issued her decision denying benefits. (Tr. 16-27) The ALJ found that Wheeler was not under a disability within the meaning of the Social Security Act. (Tr. 16-27) Following a denial of Wheeler's request for review by the Appeals Council, he filed his complaint with this court.

Wheeler was 54 years old on the date the ALJ issued her decision. (Tr. 27, 140) He had a high school education and had completed job training at a truck driving school. (Tr. 175) His past relevant work prior to his alleged disability onset date included working as a cook and a truck driver/trainer. (Tr. 170)

Wheeler's alleged disability arose from ruptured discs in his lower back, degenerative arthritis in his lower back and neck, bone spurs, arthritis of the elbows and fingers, headaches, and ringing in his ears. (Tr. 169) Wheeler initially injured his back in 1997, when he bent down to pick up a plant. His physician ordered an MRI of his lumbar spine, which revealed a ruptured disc. (Tr. 21) Wheeler underwent surgery in 1997 for the ruptured disc and was prescribed Vicodin and Naproxen, a muscle relaxer. (Tr. 43, 50, 196-97, 240, 301, 359, 386) Following surgery, Wheeler had physical therapy treatment at home. (Tr. 21) Wheeler reported some improvement but later stated that the pain and discomfort returned. He informed his doctor that he had severe low back pain with radiation down his legs, as well as

numbness and tingling in his legs and feet that caused difficulty walking and standing. His physical exam revealed spinous and paraspinal tenderness in the cervical and lumbar region with mild restriction. Wheeler had positive straight leg raises bilaterally at 10 degrees, and his doctor observed that he was unable to stoop or squat, but with some difficulty he was able to walk heel to toe tandemly and to get on and off the examination table. (Tr. 21) Wheeler had a history of lumbar disc herniation and a diagnosis of degenerative osteoarthritis in the L3-L4 and L4-L5 levels of his lumbar spine. (Tr. 169, 240, 252, 256, 262, 301, 311, 318, 322, 359, 380) A 2011 MRI revealed degenerative osteoarthritis at these levels. (Tr. 272, 377) Wheeler complained that these impairments caused him pain and tenderness in his back and neck, made it difficult to walk, interfered with his sleep, and resulted in a limited spinal range of motion. (Tr. 166, 191-92, 253, 260, 373, 404, 408)

In addition to his back impairments, Wheeler had a history of arthritis in the elbows and fingers with decreased grip strength bilaterally and a history of severe headaches and ringing in his ears with possible hearing loss. (Tr. 240, 324) He was diagnosed with ulnar neuritis and bilateral shoulder pain that was a result of supraspinatus tendon tear. (Tr. 324, 359, 362-366, 369, 370-71, 373-74) Wheeler reported that his shoulder

impairments caused him to experience numbness and weakness in his arms and a decreased range of motion. (Tr. 324, 362-63, 365-66, 374, 381, 408) On November 22, 2010, Dr. Philip M. Spence noted that Wheeler had complaints of shoulder pain and weakness with overhead lifting. (Tr. 365) His examination revealed tenderness to palpitation of the anterior shoulder bilaterally. (Tr. 366) Wheeler also was diagnosed with tinnitus and complained of severe headaches that would cause a pounding and throbbing sensation in the back of his head that would last between one and six hours. (Tr. 169, 171-72, 201, 228, 261-62, 309, 311, 317, 324-25, 337) Wheeler was prescribed Medrol dose Naproxen to reduce the inflammation of his shoulder and given strengthening exercises.

Consultative examining physician Dr. J. Smejkal, noted that Wheeler had degenerative arthritis and complained of pain. (Tr. 241-243) Wheeler had poor balance, a stiff gait, was unable to stoop or squat, walked heel to toe with difficulty, and had difficulty getting on and off the examination table. Wheeler exhibited normal pulses and sensations bilaterally and full muscle strength in all major muscle groups. (Tr. 242-243)

A District Office Field Employee noted that Wheeler demonstrated consistent difficulty with recall, was unusually subdued in his physical presence, his movements were slow, stiff, deliberate, and minimal, his facial and vocal affect were blunted, his

gait was distorted and laborious, and he balanced himself by
using the desk and chair for support when rising, or steadying
himself after rising from a chair.  Wheeler frequently flexed and
stretched his arms and fingers, which the employee inferred was
to relieve stiffness.  (Tr. 166)  The State Agency physician
recommended that Wheeler be restricted to light work, but he
noted that Wheeler was unable to stoop or squat, had difficulty
with heel to toe walking, and had a limited spinal range of
motion.  (Tr. 302)

Dr. Craig Nordstrom also completed a mental status evalua-
tion.  The evaluation noted a history of substance addiction.
(Tr. 277) Wheeler was assigned a GAF score of 63, which indicated
he had mild symptoms or difficulties in social, occupational, or
school functioning but was generally functioning pretty well.
(Tr. 278)  At his evaluation, Wheeler expressed complaints of
feeling anxious due to lack of work and stated that he frequently
worried, grit his teeth, and bit his nails.  (Tr. 247) He felt
emotional, had difficulty sleeping, but had a good appetite and
did not have any suicidal ideation plan or intent.  Wheeler re-
ported that he began to feel depressed following his wife's
stroke in 2008, and took Xanax to manage his depression.  (Tr.
247)

At the hearing before the ALJ, Wheeler testified that he lived with his wife. (Tr. 42) He usually got up between 6:00 a.m. and 8:00 a.m., made a simple breakfast, and rested in the recliner for a bit. He attended Alcoholics Anonymous meetings daily and spent the rest of the day resting, watching TV, and doing light chores, such as washing the dishes. (Tr. 42) At the time of the hearing, Wheeler was prescribed Vicodin, Naproxen, and Celexa. (Tr. 43) There were times during the night that his back hurt, and he had to go sleep in the recliner. Wheeler classified at least one-third of his days as bad days where he was in a lot of pain. (Tr. 49) He had trouble dressing and cooked only simple things because he could not be on his feet longer than 10 to 15 minutes. (Tr. 50)

Wheeler stated that he last worked as a truck driver and took medication during this time, even though he was not supposed to operate the truck while taking pain medication. (Tr. 44-45) Wheeler quit working because of back pain and his wife's stroke. (Tr. 45) Since then, he applied for jobs at convenience stores, department stores, and warehouses. (Tr. 46)

Vocational Expert Gresnick was next to testify. (Tr. 53) The VE first verified that his testimony would be consistent with the Dictionary of Occupational Titles. The VE identified

Wheeler's past work to include cook helper, tractor-trailer driver, and salvage laborer. (Tr. 55)

The ALJ then posed a series of hypothetical questions to the VE. (Tr. 56) In the first hypothetical, she asked the VE to consider someone of Wheeler's age, educational experience, and work background who was limited to an exertional level of light. The hypothetical individual occasionally could climb ramps, stairs, balance, stoop, kneel or crouch, and never could climb ladders, ropes, scaffolds, or crawl. (Tr. 56) He had to avoid concentrated exposure to wetness and hazards, like machinery and unprotected heights. The VE responded that the hypothetical individual could not do Wheeler's past work. (Tr. 56) The VE identified other jobs in the economy that such an individual could perform, including house cleaner (550,000 jobs nationally), sales attendant (32,000 jobs regionally), and cashier (2,500 jobs regionally).

In the second hypothetical, the ALJ added that the individual's concentration, persistence, and pace was moderately impacted and that he only could understand, remember, and consistently carry out short, simple one to two step, routine instructions. (Tr. 57) The VE identified several positions such an individual could perform, including production assembler (8,000 jobs regionally), small parts assembler (6,000 jobs regionally),

and electronics worker (1,000 jobs regionally). (Tr. 57-58) The following hypothetical further limited the individual to a sedentary exertional level. (Tr. 58) The VE stated that there were no jobs that such an individual could perform. (Tr. 58-59)

In her decision, the ALJ discussed the five-step sequential evaluation process for determining whether an individual was disabled. (Tr. 17-18) In step one, the ALJ found that Wheeler had not engaged in substantial gainful activity since October 5, 2009, his alleged onset date. (Tr. 18) At step two, the ALJ found that Wheeler had the severe impairments of disorders of the back (discogenic and degenerative) with neck, shoulder, back, and knee pain, and substance abuse disorder. (Tr. 18) At step three, the ALJ found that Wheeler's impairments did not meet or medically equal one of the listed impairments. (Tr. 19) Specifically, the ALJ found that Wheeler's mental impairments did not meet or medically equal Listings 12.04 or 12.09 because he did not have marked limitations in activities of daily living, social functioning, or concentration, persistence, or pace, and did not display episodes of decompensation. (Tr. 19)

In determining Wheeler's RFC, the ALJ thoroughly discussed all of Wheeler's symptoms which could "reasonably be accepted as consistent with the objective medical evidence" and followed a two-step process, first determining whether there could be a

medically acceptable basis for his complaints, and secondly
evaluating the "intensity, persistence, and limiting effects of
the claimant's symptoms" to determine if they limited his work
ability. (Tr. 20)  The ALJ determined that Wheeler had the resid-
ual functional capacity to perform light work except that he
should only occasionally climb ramps, stairs, balance, stoop,
kneel, or crouch; never climb ladders, ropes, scaffolds, or
crawl; and must avoid concentrated exposure to wetness and haz-
ards like machinery and unprotected heights.  (Tr. 20) The ALJ
further explained that Wheeler's pain medication had side effects
that moderately limited his concentration, persistence, and pace
so that he only could understand, remember, and consistently
carry out simple one or two step routine instructions and tasks.
(Tr. 20)

In reaching the RFC, the ALJ first set forth Wheeler's
complaints, including a ruptured disc in his lower back, degener-
ative arthritis in his lower back, neck bone spurs, arthritis in
his elbows and fingers, severe headaches, and ringing in his
ears.  (Tr. 21) The ALJ concluded that Wheeler's "medically
determinable impairments could reasonably be expected to cause
the alleged symptoms; however, the claimant's statements concern-
ing the intensity, persistence and limiting effects of these
symptoms are not credible to the extent they are inconsistent

9

with the residual functional capacity assessment." (Tr. 21) The ALJ then began to recap Wheeler's medical history. She first discussed Wheeler's low back and neck pain. Wheeler had an MRI taken of his lumbar spine that showed ruptured discs. He underwent surgery and had physical therapy treatment at home. (Tr. 21) The ALJ noted the pain medication Wheeler was prescribed, including Xanax, Soma, and Hydrocodone. His examination revealed spinous and paraspinal tenderness in the cervical and lumbar region with mild restriction. He had positive straight leg rising, was unable to stoop or squat, and had some difficulty with walking heel to toe. A November 30, 1999 MRI revealed L5-S1 intervertebral disc and superimposed left paracentral extruded disc herniation. (Tr. 21) A later medical report showed cervical thoracic strain and probable cervical spondylosis. (Tr. 22)

The ALJ went on to explain that although Wheeler experienced limitations in his back and neck, his allegations that the impairments continued to be significantly limited were not supported by the objective medical evidence. (Tr. 22) Dr. Smejkal stated that Wheeler did not need an assistive device for ambulation, and there was no evidence of swelling, stiffness, effusion, atrophy, or edema in the lower extremities. Wheeler had full range of motion in his lower extremities and 5/5 strength in all major muscle groups. (Tr. 22) A later test revealed negative

10

straight leg rising and intact flexion and extension range of motion. There was no evidence of tenderness of the thoracic or cervical spine, and the doctor reported that Wheeler had improved in his S1 joint and that his upper thoracic pain had improved. (Tr. 22)

The ALJ next discussed Wheeler's shoulder pain. (Tr. 22) The ALJ again dismissed Wheeler's complaints of the limitations he experienced. Dr. Smejkal reported that there were no abnormalities, stiffness, atrophy, or edema in his shoulder. He had a full range of motion, normal pulses and sensations bilaterally, and full muscle strength in all major muscle groups of the upper extremities. (Tr. 22) In November 2010, Dr. Phillip M. Spence noted that Wheeler had tenderness to palpitation of the anterior shoulder bilaterally, but negative pain at biceptial attachment with palpitation. Dr. Spence diagnosed Wheeler with shoulder pain secondary to rotator cuff tinnitus with evidence of give way weakness. (Tr. 22) Dr. Spence initiated "very conservative treatment and prescribed the Medrol dose and Naproxen to reduce the inflammation and shoulder strengthening exercises if the pain did not resolve by his next visit." (Tr. 22-23)

With regard to his mental impairment, the ALJ explained that Wheeler had a global assessment of functioning score (GAF) of 63, which indicated that he was experiencing only mild symptoms or

some difficulty in social, occupational, or school functioning, but was generally functioning pretty well. (Tr. 23) During a consultative examination, Wheeler reported feeling anxious and having difficulty sleeping, but he stated that he had a good appetite and denied any suicidal ideation. The doctor found that Wheeler had an adjustment disorder and depressed mood and that his alcohol dependence was in early partial remission. (Tr. 23)

The ALJ also found some of the activities Wheeler testified to performing were inconsistent with a finding of complete disability. (Tr. 23) The ALJ explained that Wheeler prepared meals, took care of his wife who was a stroke victim, fed his dogs, participated in AA meetings, and shopped for groceries once a week. He was able to spend time with friends and family and do some household chores. The ALJ placed special emphasis on Wheeler's attempts to seek alternative employment, which "strongly suggests that [his impairments] would not currently prevent work." (Tr. 23) The ALJ concluded that "while the claimant has experienced pain and restrictions from his impairments, the medical evidence, in its' [sic] entirety demonstrates that he has no greater limitations in his ability to perform work related activities than those reflected in the residual functional capacity." (Tr. 24)

## Discussion

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. 42 U.S.C. §405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 852, (1972)(*quoting Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed.2d 140 (1938)). *See also Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. *Rice v. Barnhart*, 384 F.3d 363, 368-69 (7th Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. 20 C.F.R. §404.1520, §416.920. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. §404.1520(b), §416.920(b). If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c), §416.920(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. §401, pt. 404, subpt. P, app. 1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the

impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. 20 C.F.R. §404.1520(e), §416.920(e). However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. 42 U.S.C. §423(d)(2); 20 C.F.R. §404.1520(f), §416.920(f).

This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles his opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit

findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. ***Steele v. Barnhart***, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §404.1529(a); ***Arnold v. Barnhart***, 473 F.3d 816, 823 (7th Cir. 2007)("subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); ***Scheck v. Barnhart***, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's]

symptoms affect [the claimant]."  20 C.F.R. §404.1529(c); *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005)("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence."  SSR 96-7p at *1.  *See also Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits.").  Rather, if the

> [c]laimant indicates that pain is a signifi-
> cant factor of his or her alleged inability
> to work, the ALJ must obtain detailed des-
> criptions of the claimant's daily activities
> by directing specific inquiries about the
> pain and its effects to the claimant.  She
> must investigate all avenues presented that
> relate to pain, including claimant's prior
> work record, information and observations by
> treating physicians, examining physicians,
> and third parties.  Factors that must be con-
> sidered include the nature and intensity of
> the claimant's pain, precipitation and aggra-
> vating factors, dosage and effectiveness of

any pain medications, other treatment for
relief of pain, functional restrictions, and
the claimant's daily activities. (internal
citations omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir.
1994)

*See also Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's descrip-
tion of pain because it is inconsistent with the objective medi-
cal evidence, she must make more than "a single, conclusory
statement . . . . The determination or decision must contain
specific reasons for the finding on credibility, supported by the
evidence in the case record, and must be sufficiently specific to
make clear to the individual and to any subsequent reviewers the
weight the adjudicator gave to the individual's statements and
the reasons for that weight." SSR 96-7p at *2. *See Zurawski*,
245 F.3d at 887; *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir.
1995) (finding that the ALJ must articulate, at some minimum
level, her analysis of the evidence). She must "build an accu-
rate and logical bridge from the evidence to [his] conclusion."
*Zurawski*, 245 F.3d at 887 (*quoting Clifford*, 227 F.3d at 872).
When the evidence conflicts regarding the extent of the claim-
ant's limitations, the ALJ may not simply rely on a physician's
statement that a claimant may return to work without examining
the evidence the ALJ is rejecting. *See Zurawski*, 245 F.3d at 888

18

(*quoting* **Bauzo v. Bowen**, 803 F.2d 917, 923 (7th Cir. 1986)) ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (emphasis in original).

Wheeler first criticizes the ALJ for failing to consider his extensive work history in conjunction with the credibility analysis. Instead of pointing to cases that hold that the ALJ must consider the claimant's work history to bolster his credibility, Wheeler has pointed to a series of cases that found that the ALJ cannot find the claimant non-credible solely on the fact that he has continued to work. Regardless, SSR 96-7p directs the ALJ to consider the claimant's work history as one factor among many in assessing credibility. The ALJ noted Wheeler's work history in her opinion, explaining that Wheeler worked as a cook helper, tractor-trailer truck driver, and salvage labor garbage removal person. (Tr. 24) It is clear that the ALJ considered and relied on Wheeler's testimony with regard to his employment history and found him credible at least to the extent of this testimony. The ALJ need not develop every piece of evidence throughout her analysis. **Pugh v. Bowen**, 870 F.2d 1271, 1278 (7th Cir. 1989). It is sufficient that the ALJ considered and gave weight to Wheeler's work history.

The ALJ also gave great weight to the fact that Wheeler searched for other jobs. It is true that the ALJ cannot determine that a claimant is not disabled solely because he has pursued employment after the alleged onset date. However, Wheeler has pointed to no legal authority to show that the ALJ cannot consider this as one factor among many that the claimant is not credible. In fact, the cases show that the ALJ is permitted to consider the claimant's work during the alleged disability period in making her overall credibility determination. *See e.g.* ***Bailey v. Astrue***, 2009 WL 5176156, *13 (N.D. Ind. Dec. 21, 2009)(explaining that ALJ can consider work during alleged disability period) (*citing* ***Berger v. Astrue***, 516 F.3d 539, 546 (7th Cir. 2008) ("Although the diminished number of hours per week indicated that [the claimant] was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled."); ***Hastings v. Astrue***, 2009 WL 2601245, *7 (C.D. Ill. Aug. 20, 2009)("[P]art-time work after the alleged onset date of . . . disability contradicted . . . testimony about the severity of [claimant's] symptoms."); ***Whetzel v. Astrue***, 2009 WL 537640, *17 (N.D. Ind. Mar. 4, 2009) (concluding that the ALJ appropriately considered part-time work in making overall credibility determination)). Therefore, the ALJ did not err by taking Wheeler's search for employment into consideration.

Next, Wheeler complains that the ALJ failed to consider observations of the District Office field report that supported his complaints. The field office report stated that Wheeler looked fatigued, had difficulty with recall, his movements were slow, stiff, deliberate, and minimal, his gait was distorted and laborious, and he had to steady himself prior to being seated. (Tr. 166) Wheeler argues that this corroborates his complaints of pain and that the ALJ was required to address it in her opinion.

Social Security Ruling 96-7p specifically lays out the evidence the ALJ must consider when rendering a credibility determination. In addition to laboratory findings, diagnosis, medical opinions, treatment, efforts to work, and daily activities, the ALJ "must also consider any observations about the individual recorded by Social Security Administration (SSA) employees during interviews." The ALJ's opinion is devoid of any mention of the interviewer's report or observations. Because of this, the court cannot discern whether the ALJ did in fact consider the report. *See **Smith v. Barnhart***, 59 Fed.Appx. 901, 906 (7th Cir. 2003) (remanding in part because ALJ did not discuss SSA employee's interview). Additionally, the ALJ cannot ignore evidence that contradicts her opinion. Wheeler has not demonstrated that the interviewer's observations were in direct conflict with the ALJ's decision, but the conflict is evident on its face. The ALJ did

not provide any limitations for difficulty moving or sitting as observed by the SSA interviewer. On review, the court is not permitted to weigh whether consideration of this additional opinion would have bolstered Wheeler's credibility and tipped the scale in favor of a finding of disability. *See Kepple v. Massanari,* 268 F.3d 513, 516 (7th Cir. 2001) (explaining that the court cannot weigh the evidence). This decision is reserved for the ALJ. Because SSR 96-7P mandates that the ALJ consider this additional evidence, the record does not reflect that the interviewer's report was taken into consideration, and the report tends to corroborate some of Wheeler's complaints of pain, the court REMANDS this case for further proceedings on this issue.

Next, Wheeler complains that the ALJ failed to demonstrate how the evidence that supported his allegations of pain in his back, neck, and shoulders as a result of his degenerative osteoarthritis, shoulder impairment, and ulnar neuritis was considered. Wheeler points to many medical records where he complained of pain that he rated at a minimum of 6 out of 10 and that affected his ability to sit, stand, or walk or limited the use of his arms and caused pain, numbness, or weakness in his arms. Wheeler argues that the ALJ did not address these medical records that supported his complaints of pain and contradicted the ALJ's credibility determination. Specifically, the state agency exam-

ining physician, Dr. Smejkal, observed that Wheeler complained of severe pain and demonstrated poor balance, a stiff gait, inability to stoop or squat, walked heel/toe with difficulty, and had difficulty getting on and off the evaluation table. Wheeler's treating physician, Dr. Spence, also noted that Wheeler had received some relief from painkillers, but still had an antalgic gait and consistently complained of back, neck, and shoulder pain. The Commissioner contends that the ALJ's decision was supported by substantial evidence, pointing to the medical opinions provided by Dr. Smejkal and Dr. Spence and the opinions of the reviewing doctors.

Wheeler first argues that there were discrepancies between Dr. Smejkal's opinion and the ALJ's conclusion that were left unresolved. Dr. Smejkal found that Wheeler was unable to stoop, which contradicts the ALJ's conclusion that Wheeler could stoop occasionally. Immediately following the ALJ's discussion of Dr. Smejkal's assessment, the ALJ explained that Wheeler's allegations that his impairments significantly limited his abilities were not supported by the record in its entirety. The ALJ explained that Wheeler did not need an assistive device, there was no evidence of swelling, stiffness, effusion, atrophy, or edema in the lower extremities, Wheeler had a normal gait, and there was no evidence of tenderness of the cervical or thoracic spine.

(Tr. 22) Although this explains how Wheeler's complaints were contradicted by the evidence, this does not explain why, or what objective medical evidence contradicted Dr. Smejkal's assessment. The ALJ has pointed to no medical records which suggest that Wheeler was capable of stooping.

In *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003), the court addressed a similar discrepancy where one physician found that the claimant had a limited range of motion while another determined that he could stoop occasionally. The ALJ adopted the second physician's opinion without resolving the conflict between the two opinions. *Golembiewski*, 322 F.3d at 917. The Seventh Circuit reversed the decision, directing the ALJ to resolve the conflict. *Golembiewski*, 322 F.3d at 917.

Although it is clear that the ALJ considered Dr. Smejkal's opinion, the ALJ cannot ignore the portions of his opinion that contradicted her final determination. *Bailey v. Barnhart*, 2002 WL 31040350, *10 (N.D. Ill. Sept. 12, 2002)(*citing* *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994)). The ALJ has a duty to consider and explain the important evidence that contradicts her opinion. *See Golembiewski*, 322 F.3d at 917 (explaining that the ALJ cannot ignore evidence contrary to his ruling); *Samuel v. Barnhart*, 316 F.Supp.2d 768, 774 (E.D. Wis. 2004) (same). The

ALJ has left a direct conflict unresolved and must address it on remand.

Wheeler also complains that the ALJ failed to address other evidence that contradicted her decision and would support a finding of disability. The state agency consultative examining physician, Dr. Smejkal, noted that Wheeler had severe pain, poor balance, difficulty walking heel to toe, and difficulty getting on and off the examination table. Dr. Spence stated that Wheeler had some relief from painkillers but that he had an antalgic gait and consistently complained of back, neck, and shoulder pain. The ALJ acknowledged that Wheeler experienced pain in his back, neck, and shoulders, and that some of the medical tests revealed problems consistent with the pain. In fact, the ALJ specifically acknowledged Dr. Smejkal's report that Wheeler had difficulty getting on and off the examination table, difficulty walking heel to toe, and was unable to stoop or squat. (Tr. 21) The ALJ also noted that Wheeler told his doctor he had severe lower back pain with radiation into his legs that caused difficulty walking and standing. (Tr. 21) The ALJ identified numerous documents that substantiated Wheeler's complaints, but she went on to point to other evidence, some of which was prepared by the same doctors whose opinion Wheeler complains the ALJ did not account for, and which contradicted his complaints of pain. Specifically, the ALJ

identified reports where Wheeler had full muscle strength, no decreased range of motion, and there were no findings of tenderness in the area that was the source of Wheeler's complaints of pain. (Tr. 21-22) Because the ALJ both acknowledged the conflicting evidence and explained her reasons for holding otherwise, her credibility determination was not patently wrong with respect to this issue.

Wheeler next complains that the ALJ did not resolve the discrepancies between the positions the VE identified in response to the ALJ's hypothetical questions and the DOT. The Commissioner bears the burden at step five of establishing that the claimant can perform other work that "exists in significant numbers in the national economy." 20 C.F.R. §404.1560(c)(2); *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). A VE's testimony can satisfy this burden only if that testimony is reliable. *Britton,* 521 F.3d at 803; *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004); *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). "A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Britton*, 521 F.3d at 803.

SSR 00—4p requires:

> When a VE or VS provides evidence about the
> requirements of a job or occupation, the ad-

> judicator has an affirmative responsibility
> to ask about any possible conflict between
> that VE or VS evidence and information pro-
> vided in the DOT. In these situations, the
> adjudicator will:
>
> Ask the VE or VS if the evidence he or she
> has provided conflicts with information pro-
> vided in the DOT; and if the VE's or VS's
> evidence appears to conflict with the DOT,
> the adjudicator will obtain a reasonable ex-
> planation for the apparent conflict.

The regulations allow the ALJ to rely on either the VE or the DOT when making a determination regarding available work for the claimant. *See* 20 C.F.R. §404.1566(d), (e). But if the VE's testimony and the DOT conflict, the ALJ first must obtain a reasonable explanation for the conflict. ***Prochaska,*** 454 F.3d at 735. Furthermore, before the ALJ can rely on the VE's testimony as substantial evidence, she must make the SSR 00—4p inquiry as to consistency with the DOT and elicit a response as to any discrepancies. ***Prochaska,*** 454 F.3d at 735 (*citing* ***Haddock v. Apfel***, 196 F.3d 1084, 1087 (10th Cir. 1999)). SSR 00—4p places the burden of making the DOT inquiry on the ALJ, not the claimant. ***Prochaska***, 454 F.3d at 735.

An ALJ may "accept testimony from a VE that conflicts with the DOT when, for example, the VE's experience and knowledge in a given situation exceeds that of the DOT's authors." ***Donahue,*** 279 F.3d at 446. The ALJ also may accept the VE's conflicting testimony when based on information in "other reliable publications."

27

SSR 00—4p; *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008).

"The ALJ's reliance upon the VE's testimony is not reversible

error because an ALJ may rely upon a VE's 'bottom-line' or 'pure-

ly conclusional' testimony, so long as data and reasoning under-

lying the opinion are 'available on demand.'" *Overman*, 546 F.3d

at 464 (*citing Donahue,* 279 F.3d at 446). *See also Barrett v.*

*Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) (citing same).

Here, the ALJ inquired whether the positions were consistent

with the DOT. The VE confirmed that they were, and Wheeler's

counsel did not identify any inconsistencies at the time of the

hearing. Wheeler argues that it was apparent that the jobs the VE

identified were Reasoning Level 2 jobs, which required greater

ability than the one or two step instructions or tasks the ALJ

found Wheeler was limited to performing.

The Seventh Circuit previously demanded that the claimant

identify any discrepancies at the hearing and found that con-

flicts raised only after the hearing were untimely. *Donahue*, 279

F.3d at 447. The Seventh Circuit reconsidered this standard in

*Prochaska*, and determined that the ALJ has an affirmative duty to

resolve any conflicts. The claimant no longer is required to

raise apparent inconsistencies between the VE's testimony and the

DOT at the hearing. *Prochaska,* 454 F.3d at 735. Rather, the

claimant may raise a conflict between the VE's testimony and the

DOT for the first time on appeal if he can show that the conflict was so obvious that the ALJ should have identified it without assistance. *Overman*, 546 F.3d at 463.

The Commissioner's only defense is that Wheeler's objection is untimely. However, as explained above, Wheeler may raise this conflict on appeal. There is no ambiguity in the ALJ's RFC determination or the DOT's description of the identified positions. Rather, the conflict is apparent from the very terms of the descriptions of the positions and the ALJ's RFC determination. The ALJ did not inquire about the inconsistencies, and therefore, did not fulfill her affirmative duty to resolve the apparent conflict between her RFC finding and the DOT descriptions. The ALJ must resolve this discrepancy on remand.

Finally, Wheeler argues that the ALJ's RFC finding did not include an adequate analysis of several of his impairments and resulting limitations, including severe headaches, ulnar neuritis, shoulder impairments, and sitting and standing limitations. The Commissioner does little to oppose Wheeler's argument, stating only that Wheeler has the burden to prove he is disabled and has not identified any objective medical evidence that imposes greater limitations than those determined by the ALJ.

SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative
> discussion describing how the evidence sup-
> ports each conclusion, citing specific medi-
> cal facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities,
> observations). In assessing RFC, the adjudi-
> cator must discuss the individual's ability
> to perform sustained work activities in an
> ordinary work setting on a regular and con-
> tinuing basis (i.e., 8 hours a day, for 5
> days a week, or an equivalent work schedule),
> and describe the maximum amount of each work-
> related activity the individual can perform
> based on the evidence available in the case
> record. The adjudicator must also explain how
> any  material inconsistencies or ambiguities
> in the evidence in the case record were
> considered and resolved. (footnote omitted)

Thus, as explained in this section of the Ruling, there is a

difference between what the ALJ must contemplate and what she

must articulate in her written decision. *See Morphew v. Apfel*,

2000 WL 682661, *3 (S.D. Ind. Feb. 15, 2000) ("There is a dis-

tinction here [in SSR 96-8p] between what the ALJ must consider

and what the ALJ must articulate in the written opinion."); *Law-

son v. Apfel*, 2000 WL 683256, *2-4 (S.D. Ind. May 25, 2000) (ALJ

who restricted the claimant to medium work satisfied the require-

ments of SSR 96-8p)("[SSR 96-8p] does not require an ALJ to

discuss all of a claimant's abilities on a function-by-function

basis. Rather, an ALJ must explain how the evidence supports his

or her conclusions about the claimant's limitations and must

discuss the claimant's ability to perform sustained work activi-

ties."). The ALJ is required to "consider the aggregate effect of

this entire constellation of ailments — including those impair-
ments that in isolation are not severe." *Golembiewski*, 322 F.3d
at 918. The ALJ cannot ignore entire lines of evidence or cherry
pick the evidence that is favorable to a finding of non-disabil-
ity. *Golembiewski*, 322 F.3d at 917. Rather, the ALJ must weigh
all impairments and consider the effect these ailments have on
the claimant's ability to function in their entirety.

The ALJ did nothing more than acknowledge Wheeler's severe
headaches, ulnar neuritis, shoulder impairment, and sitting and
standing limitations.  Even if the ALJ did not consider these
impairments severe, she had a duty to consider them in the aggre-
gate with Wheeler's other impairments or to explain why these
impairments were irrelevant to her analysis.  Instead, the record
is devoid of any indication that the ALJ considered Wheeler's
headaches and ulnar neuritis.  Moreover, the ALJ determined that
Wheeler was limited to light work, which required "a good deal of
walking and standing," but she did not explain how she reached
this conclusion in light of the evidence that reflected diffi-
cultly walking and standing.  20 C.F.R. §404.1567.  Wheeler's
physicians noted that he had difficulty walking, including heel
to toe walking, and a stiff gait.  The field office employee also
observed problems with walking, standing, and rising from a
seated position.  The ALJ has provided no analysis to reconcile

these inconsistencies.  The case is **REMANDED** to the ALJ for further explanation of how these impairments were considered in the RFC determination and how she came upon her conclusion that Wheeler was capable of light work in spite of problems with his gait.

———————————

Based on the foregoing, this matter is **REMANDED** to the ALJ for further proceedings consistent with this Opinion and Order.

ENTERED this 26th day of February, 2013


                              s/ ANDREW P. RODOVICH
                                 United States Magistrate Judge